**STATE of Maine**

v.

**Carlton W. ALLEN.**

Supreme Judicial Court of Maine.

June 16, 1972.

John O. Rogers, Asst. County Atty., Houlton, for plaintiff.

Forrest W. Barnes, Houlton, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

In the spring of 1968, one Robert Oberstein, a student at Ricker College in Houlton, Maine, looking to a future career in crime detection, volunteered to work for the Houlton Police Department and the United States Customs Service as an undercover narcotics agent on the campus. His assignment was to obtain all the information he could respecting drug users and drug sellers in the college community. In setting an atmosphere conducive to the

procurement of drug traffic intelligence and to gain the trust of the people involved with drugs at the college, Oberstein engaged in frequent extensive discussions of drugs, had literature on the subject in his room and, generally speaking, conveyed an attitude that he himself advocated the use of marijuana and did at times encourage people to do so. In fact, Oberstein once actually participated in the smoking of some hashish with the appellant and certain other students. This happened in April, 1968 when these students with the appellant pooled some money and gave it to the appellant for him to purchase the drugs, which he did. The indictment in the instant case was not intended to cover this activity and the evidence thereof was merely offered to indicate appellant's disposition to traffic in drugs.

■ With entrapment interposed as a defense, the evidence of a prior sale of a narcotic drug by the appellant to the witness, although an extraneous offense, was admissible on the issue of intent. Sutton v. State, 1961, 170 Tex.Cr.R. 617, 343 S. W.2d 452, 454. See also, People v. Aldridge, 1960, 19 Ill.2d 176, 166 N.E.2d 563, 565.

The appellant was indicted on April 3, 1969 for the unlawful sale on November 6, 1968 of a narcotic drug ("Cannabis Sativa L." or "Cannabis Seed"—otherwise known as marijuana) and for the unlawful possession of the same drug in violation of 22 M.R.S.A. § 2362.[1] These separate charges were laid out in separate counts. Following a trial by jury, Allen was convicted on both counts and was given two sentences in the Maine State Prison of not less than two (2) years and not more than four (4) years to be served concurrently. He appeals to this Court for relief, claiming reversible error in the Court below.

The critical facts surrounding the offenses charged, viewed in the light most favorable to the State, which the jury justifiably accepted as proven beyond a reasonable doubt, depict the following events. From the beginning of the school year in September, 1968 until the alleged sale on November 6, 1968, Oberstein, the informer and undercover man, had asked the appellant on the average of once a week if the appellant would get him a "nickel bag" of marijuana. On November 6 Allen went to Oberstein's room in the dormitory and handed him an envelope which contained a substance later identified to be marijuana. Delivery was made and accepted forthwith, even though Oberstein did not have the exact amount of five ($5) dollars to pay for the drug. Both went to a local store where Oberstein had a ten ($10) dollar bill changed. The record is clear that Allen received the five ($5) dollars purchase price at the store while the marijuana had already been delivered at the college dormitory. Nowhere in the evidence is there any suggestion that Allen was making a profit on the transaction.

■ The appellant first argues that the denial of his motion for continuance on April 17, 1969 was an abuse of discretion and reversible error. Retained on April 10th, the day following appellant's arrest on the indictment, counsel was afforded for trial preparation a total of eighteen days, and had received notice of the trial date at least eleven days before the trial. The reasons for the continuance were couched in general terms as follows:

> "[b]ecause of the nature of the case, the amount of research anticipated, the problems of preparation for trial coupled with consummating other legal business presently not completed but unconnected with this case, Defendant's Attorney does not have ample time in which to prepare his defense."

No particulars were made to appear to support these averments. The record is

1. 22 M.R.S.A. § 2362. Uses of narcotic drugs

It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this chapter.

barren of any claim of actual unpreparedness on the day of trial, but rather shows the contrary. Absent proof of particular circumstances requiring more time, the period of eleven days in preparation for trial seems more than ample opportunity for experienced defense counsel to mount an adequate defense.

Generally speaking, the granting or denial of a motion for continuance is within the sound discretion of the trial judge and his ruling will not be set aside in the absence of a showing of an abuse of discretion, which the appellant has failed to do. Prejudice under the circumstances of this case will not be presumed, but must be shown. State v. Alley, 1970, Me., 263 A.2d 66; State v. Rastrom, 1970, Me., 261 A.2d 245. Where as in the instant case the motion for continuance is based upon want of time to prepare a defense, the granting of such a motion definitely rests in the sound discretion of the presiding justice. State v. Wardwell, 1962, 158 Me. 307, 183 A.2d 896.

The appellant next cites as error the trial Court's refusal to instruct the jury as requested that if they were to find the appellant had acted as agent for the purchaser, Oberstein, then the appellant could not be convicted of a "sale" within the meaning of 22 M.R.S.A. § 2362. The Justice below, however, instructed the jury that "to be the agent of the buyer" would be no defense under section 2362.

The appellant maintains that a person cannot be convicted of a "sale" of any narcotic drug if that person is, in fact, the agent of the buyer in the transaction and supports his argument with this Court's rationale when dealing with prosecutions for violation of the liquor law. See, State v. Parady, 1931, 130 Me. 371, 156 A. 381; State v. Kilbreth, 1932, 131 Me. 489, 159 A. 504. These cases were decided under very different statutes. In the prohibition era, it was unlawful to sell any intoxicating liquor, but it was legal to possess the same, provided the possession was not with intent to sell.[2] Under the Uniform Narcotic Drug Act, which became effective in Maine on April 16, 1941 (See, Public Laws, 1941, c. 251), not only was the sale of narcotics (except as otherwise authorized by the statute) prohibited, but so was the possession of any narcotic drug, whether intended for sale or otherwise (except as otherwise authorized by the statute). Furthermore, the sale concept was expressly made more comprehensive in meaning than the definition of the term "sale" would ordinarily encompass. Section 2361 of M.R.S.A., Title 22, identical with its counterpart in the Uniform Narcotic Drug Act, 9B U.L.A., sec. 2, p. 285, as the original State enactment [P.L., 1941, c. 251, sec. 1 (10)], defines the word "sale" to include "barter, exchange or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee."

This Court has not heretofore been called upon to construe the legislative meaning of "sale" or "sell" as employed in our Narcotic Drug Law. Where the Legislature expressly indicated an intent to control the use of narcotic drugs to a much greater extent than it did the use of intoxicating liquors in prohibition days, we do not consider the *Parady* and *Kilbreth* decisions of precedential binding effect.

2. R.S., 1930, c. 137, § 6. "No person shall at any time, by himself, his clerk, servant, or agent, directly or indirectly, sell any intoxicating liquors . . . ."
R.S., 1930, c. 137, § 7. " * * * Any *person who aids* in the sale of intoxicating liquor, by acting as agent, broker, clerk, employee, servant, or otherwise, or in any manner aids or assists in violating any provision of law relating to intoxicating liquors, is equally guilty with the principal and shall suffer like penalties."
R.S., 1930, c. 137, § 16. "No person shall deposit, or have in his possession, * * any intoxicating liquors with intent to sell the same, or with intent that the same shall be sold by any person or aid or assist any person in such sale."

The narrow interpretation of the word "sale" favored by the appellant would circumscribe its application to the common usage of the term in the law of commerce. But our Legislature has broadened its use to include the transfer of any narcotic drug from one person to another, for a price or without value recompense, to the extent of embracing within the intended meaning the mere offer to transfer. Thus, the word was given by express legislative definition a variable and broad meaning to reach all possible unauthorized uses of narcotic drugs. It is clear that the legislative design in Maine is to eradicate the unauthorized traffic in narcotics. To carry out that manifest objective the term "sale" was legislatively expanded to reach every step or device in the scheme of illegal distribution. The Legislature further intended the Act to have the broadest scope to facilitate its enforcement. It is a known fact that drug traffickers maintain clandestine operations carefully guarded from official detection. Illegal transfers usually do not take place under the eyes of the police. The proscription of the transfer, without more, facilitates the enforcement of the law against traffickers by eliminating, as the statute purports to accomplish, the burden of proving that the transfer was not being made as agent of the buyer. If this loophole through which the appellant attempts to justify his participation in the drug traffic is permitted to exist in this comprehensive legislation, the purpose of the Act would be severely frustrated by seriously hindering the enforcement process. See,

State v. Reed, 1961, 34 N.J. 554, 170 A.2d 419.

Several jurisdictions have given their statute, adopted under the Uniform Narcotic Drug Act and containing a similar definition of the term "sale" as obtains in our Act, the narrow construction sought by the appellant in the instant case; they have held that an agent of a purchaser cannot be convicted of a "sale" of a prohibited drug under the Act.[3] The Federal Courts have reached a similar result under a somewhat similarly worded statute.[4]

In People v. Shannon, 1959, 15 Ill. 2d 494, 155 N.E.2d 578, the Illinois Court rejected this "purchasing agent" doctrine contended for by the appellant in these words:

"We interpret the meaning of the word 'sale' as defined by the act, to be much broader in scope than that usually given to it in other branches of the law. Admittedly, the defendant took the role of at least an agent, and the act specifically declares an agent in a narcotics transaction to be a seller. We are of the opinion that the definition shows a legislative intent that the act of a person whether as agent, either for the seller or the purchaser, or as a go-between in such a transaction constitutes a sale."

We believe that the decisions of the Illinois Court and those State Courts[5] that

---

3. Smith v. State, 1965, Tex.Cr.App., 396 S.W.2d 876; People v. Hingerton, 1967, 27 A.D.2d 754, 277 N.Y.S.2d 754; Commonwealth v. Harvard, 1969, 356 Mass. 452, 253 N.E.2d 346; Jones v. State, 1971, Okl.Cr., 481 P.2d 169; Roy v. State, 1971, Nev., 489 P.2d 1158.

4. United States v. Barcella, 1 Cir., 1970, 432 F.2d 570; United States v. Winfield, 2 Cir., 1965, 341 F.2d 70; United States v. Sawyer, 3 Cir., 1954, 210 F.2d 169; United States v. Sizer, 4 Cir., 1961, 292

F.2d 596 (dictum); Adams v. United States, 5 Cir., 1955, 220 F.2d 297; Myers v. United States, 8 Cir., 1964, 337 F.2d 22 (dictum); Vasquez v. United States, 9 Cir., 1961, 290 F.2d 897 (dictum); Kelley v. United States, 1960, 107 U.S. App.D.C. 122, 275 F.2d 10.

5. State v. Weissman, 1962, 73 N.J.Super. 274, 179 A.2d 748; State v. Dwyer, 1969, N.D., 172 N.W.2d 591; People v. Boone, 1971, 31 Mich.App. 193, 187 N.W.2d

have followed its lead are more in line with what we perceive is a clear legislative intent to include the term "agent" within the rather expansive definition of "sale" contained in the Uniform Narcotic Drug Act. We conclude that the transfer of the marijuana by Allen to Oberstein constituted a sale within the purview of 22 M.R.S.A. § 2362 and hold there was no error in refusing the requested instruction.

The appellant further requested that the jury be instructed to the effect that, if they found him guilty of the sale of the marijuana, then they could not also find him guilty of possession of that same drug. The Presiding Justice refused to give this instruction and this is one of the points of error on appeal. In this regard, it is necessary to view the specific facts of this case in proper perspective. The only evidence of possession in the case was Allen's possession of the marijuana immediately prior to the sale to Oberstein. There was no proof of possession of marijuana independent of the possession necessary for the sale.

▉ We do recognize that certain proven facts may constitute a violation of two different statutes or of distinct provisions of the same statute. State v. Lindsey, 1969, Me., 254 A.2d 601; Fuller v. State, 1971, Me., 282 A.2d 848. When the same acts constitute two offenses, but these acts are such that the person may commit either offense without committing the other, the offenses are different though the acts be the same and the perpetrator may be punished twice, once for each offense. State v. Jellison, 1908, 104 Me. 281, 71 A. 716. It is elementary that the State cannot divide a single offense into several parts according to time and conduct and base separate prosecutions upon and impose separate punishments for the various necessary divisions of that single crime. State v. Shannon, 1939, 136 Me. 127, 3 A.2d 899.

▉ The possession of narcotic drugs is an offense distinct from the sale thereof. But in the instant case the possession and sale clearly constituted one single and same act. The possession, as legally defined, is necessarily a constituent part of the sale, as legally defined. Where the only possession of the narcotic drug is that incident to and necessary for the sale thereof, and it does not appear that there was possession before or after and apart from such sale, the State cannot fragment the accused's involvement into separate and distinct acts or transactions to obtain multiple convictions, and separate convictions under such circumstances will not stand. People v. Roberts, 1953, 40 Cal.2d 483, 254 P.2d 501; People v. Cuevas, 1971, 16 Cal. App.3d 245, 93 Cal.Rptr. 916; State v. Duplain, 1967, 102 Ariz. 100, 425 P.2d 570; Jason v. State, 1970, 9 Md.App. 102, 262 A.2d 774. The error is not cured by the fact the trial Court permitted the two sentences to run concurrently. People v. Johnson, 1970, 5 Cal.App.3d 844, 85 Cal. Rptr. 238. The conviction and sentence upon the charge of possession must be set aside.

▉ The appellant charges error by the Presiding Justice in his instructions to the jury respecting the defense of entrapment. As in the case of State v. Calanti, 1946, 142 Me. 59, 46 A.2d 412, Oberstein's sole alleged "inducement" to Allen to sell marijuana was the informer's inquiry and solicitation for the drug and his willingness to purchase it and, if there was any subterfuge, it consisted only in the concealment of his identity and working arrangement with the authorities and his own pretended stand on the drug issue. Such conduct is entirely lacking in the legal elements of lure or inducement to justify the

569; Higby v. State, 1971, Wyo., 485 P.2d 380; McKay v. State, 1971, Alaska,

489 P.2d 145; State v. Jacobson, 1971, 15 Ariz.App. 604, 490 P.2d 433.

invocation of the rule and sustain the defense of entrapment. In State v. Gellers, 1971, Me., 282 A.2d 173, we reaffirmed the *Calanti* doctrine that where the criminal intent *originates* in the mind of the accused and the offense is completed, the mere fact that the accused is furnished an *opportunity* to commit a crime or was aided in the commission thereof by an agent of the State in order to secure evidence necessary to the prosecution, constitutes no defense. We note that the appellant neither requested specific instructions nor objected to the charge as given respecting his defense of entrapment. Rule 30(b), M.R. Crim.P. states that no party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Noncompliance with the rule, in the absence of manifest error which we do not find exists in this case, is fatal to this claim of error. See, State v. Peaslee, 1972, Me., 287 A.2d 588; State v. James, 161 Me. 17, 206 A.2d 410.

The appellant has raised other points of error which we have considered and find to be without merit.

The entry will be

Appeal from conviction and sentence for unlawful sale of narcotic drug under Count I of Indictment docketed at the Superior Court in Aroostook County at Criminal Docket in said Court—Docket No. 8417—is hereby denied.

Appeal from conviction and sentence for unlawful possession of the same narcotic drug under Count II of said Indictment docketed at the Superior Court in Aroostook County at Criminal Docket in said Court—Docket No. 8417—is hereby sustained, the sentence and conviction for the offense of unlawful possession under said Count II of said Indictment are hereby set aside and said Count II of said Indictment is hereby dismissed with prejudice.

All Justices concurring.