STATE of Maine

v.

Ronald MANSIR.

Supreme Judicial Court of Maine.

Argued Nov. 17, 1981.

Decided Jan. 13, 1982.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Julio DeSanctis, III (orally), Bangor, for defendant.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

Ronald Mansir appeals from a judgment entered in Superior Court (Penobscot County) on his conviction by a jury of two counts of unlawful trafficking in scheduled drugs in violation of 17–A M.R.S.A. § 1103.[1] Defendant argues that he was acting only as the procuring agent of an undercover agent and that the presiding justice should have instructed the jury on that defense. He further argues that because the evidence shows his conduct to be that of a procuring agent, it is insufficient to establish the offense of trafficking. We deny the appeal.

In November 1979 a Division of Special Investigations undercover agent, Kenneth MacMaster, asked defendant if he had any marijuana for sale. Defendant replied that he did not and asked if MacMaster had a car. Defendant indicated that a Michael

1. 17–A M.R.S.A. § 1103 (Supp.1981) provides:
§ 1103. *Unlawful trafficking in scheduled drugs*
1. A person is guilty of unlawful trafficking in a scheduled drug if he intentionally or knowingly trafficks in what he knows or believes to be any scheduled drug, and which is, in fact, a scheduled drug, unless the conduct which constitutes such trafficking is either:
A. Expressly authorized by Title 22; or
B. Expressly made a civil violation by Title 22.
2. Violation of this section is:
A. A Class B crime if the drug is a schedule W drug or if it is marijuana in a quantity of 1,000 pounds or more;
B. A Class C crime if the drug is a schedule X drug or if it is marijuana in a quantity of more than 2 pounds; or

C. A Class D crime if the drug is a schedule Y or schedule Z drug.
3. A person shall be presumed to be unlawfully trafficking in scheduled drugs if he intentionally or knowingly possesses more than 2 pounds of marijuana.
Trafficking is defined in 17–A M.R.S.A. § 1101 (Supp. 1981) as follows:
17. "Traffick:"
A. To make, create, manufacture;
B. To grow or cultivate, except with respect to marihuana;
C. To sell, barter, trade, exchange or otherwise furnish for consideration; or
D. To possess with the intent to do any act mentioned in paragraph C, except that possession of 2 pounds or less of marijuana with such intent shall be deemed furnishing.

Cochran had marijuana so they drove to Cochran's residence. When they arrived MacMaster asked the price of a "dime bag" of marijuana and if defendant could get him some "tea" (phencyclidine). Defendant told MacMaster that the marijuana would be $20.00 and that Cochran had phencyclidine for sale for $2.00 a tablet. MacMaster gave defendant two twenty dollar bills and defendant entered the house, returning a short time later with the drugs, which he gave to MacMaster.

At trial the presiding justice instructed the jury on trafficking, on the lesser included offense of furnishing scheduled drugs and on the law of accomplices. Defendant contends, however, that the court should also have instructed

> that the defendant may not be found guilty of the offense of trafficking in drugs if he was acting as an agent of the purchaser rather than the seller.[2]

Although we realize that the procuring agent defense to charges of selling narcotics has been accepted in other jurisdictions, see, e.g., United States v. Barcella, 432 F.2d 570 (1st Cir. 1970); Jones v. State, 481 P.2d 169 (Okla.Crim. 1971); Commonwealth v. Harvard, 356 Mass. 452, 253 N.E.2d 346 (1969), the proposed instruction is not appropriate under the Maine Criminal Code.

In 1972 we considered and expressly rejected the procuring agent defense in a prosecution for sale of narcotics under 22 M.R.S.A. § 2362 (1965), a predecessor of the current statute.[3] In State v. Allen, Me., 292 A.2d 167 (1972) we refused to circumscribe our drug laws by the usage of concepts from the law of commerce. We also rejected the premise that characterizing a person as an agent of the buyer rather than of the seller could negate culpability when in effect that person was still participating in the illegal distribution of drugs. Focusing instead on the prohibited conduct, the Allen Court found an illegal sale "to include the transfer of any narcotic drug from one person to another, for a price or without recompense, to the extent of embracing within the intended meaning the mere offer to transfer." Id. at 171.

Although Section 2362 no longer exists, the legislative intent to punish the broad range of activities included in the prior construction of sale remains. The Maine Criminal Code differs only in that the transfer of scheduled drugs for consideration, trafficking under 17–A M.R.S.A. § 1103, is treated as a more serious crime for sentencing purposes than furnishing, the transfer or delivery of scheduled drugs without consideration that is proscribed by 17–A M.R.S.A. § 1106. We need not here decide the extent to which Allen retains vitality under the code's recognition of degrees of culpability depending on the nature of the transfer. In the present case the trial justice properly instructed the jury on the elements of trafficking, furnishing and accomplice liability. Based upon such instructions, the jury is presumed to have found that Mansir sold drugs for his own benefit or acted for the purpose of aiding the seller.

Under the accomplice formulations set forth in 17–A M.R.S.A. § 52(2)(c) and (3)(A), the defendant is legally accountable for the conduct (sale) of another when the defendant aided such other person in committing the crime (sale) with the intent of facilitating the commission of the crime (sale). Thus, the proposed procuring agent instruction herein was incomplete and misleading. Whether the defendant acted as an agent of the purchaser is irrelevant, if at the same time the defendant in fact aided the seller with the intent of facilitating the sale.

The entry is:

Judgments affirmed.

---

2. Through some oversight, a copy of defendant's requested instruction did not appear in the record on appeal. However, since M.R. Crim.P. 36 permits us to correct such oversights and omissions, we will consider the instruction provided to us at argument by agreement of both counsel.

3. In the halcyon days of prohibition such a defense was available in prosecutions for illegal sale of liquor. See State v. Parady, 130 Me. 371, 156 A. 381 (1931).